MR. JUSTICE MORRISON,
specially concurring:
The majority opinion recalls to mind the old Montanan who said, “A moose is a cow designed by a committee.” Indeed, this moose must have been designed by a committee.
The only bright light which shines through this otherwise verbose and rambling epistle is the result. In that I concur.
The majority opinion contains a good deal of judicial chaff including a rather lengthy recital of irrelevant historical data surrounding *377 passage of the Montana Water Use Act of 1973. This effort effectively obfuscates the issues while impressing the casual reader that scholarship is the cornerstone of the majority’s pronouncement.
The issue in this case is quite simple and straight forward. At the time the federal government granted school lands to the state in trust for educational purposes, did the federal government include within the grant the right to develop water to achieve the educational purposes of the trust? If, as an incident of ownership, the state acquired, as appurtenant to the land, the right to develop water so that the purpose of the trust could be realized, then the state cannot alienate that property right in diminution of the trust res.
The majority opinion initially indicates that the educational purpose of the trust cannot be realized without an appurtenant water right. With this I agree. However, in an apparent attempt to avoid interrupting the priorities of other appropriators, the majority seems to be saying that this appurtenant right did not spring into existence until it was developed by the lessee. This approach recognizes the priority of appropriators. In order to accomplish this objective the majority has created a fictional agency whereby the lessee, who develops the water, does so on behalf of the state. This nonsense is engaged to achieve a result.
The majority’s effort to secure unto school lands a sufficient amount of water to maximize their income potential for the trust, without disrupting prior rights, could have been achieved on a more legally sound foundation by simply holding that the federal government granted to the state school lands with the appurtenant right to develop water in order to maximize their income producing ability. The court then could have held that, under the prior appropriation doctrine, a priority date did not commence until the right was developed. In this way, at least, the majority would have recognized the property right in the state from the beginning which would give a basis for holding that the lessee developed the right for the state.
In truth, these school lands were withdrawn from the public domain prior to any appropriation. The federal government granted to the state, in trust for educational purposes, land and the water necessary to develop the land for its trust purposes. Later, when the public domain was settled, appropriations were made but the appropriations only operated on those lands remaining in the public domain. Settlers who moved in and appropriated could have obtained no water from school lands which resided safely in the trust.
*378 I find it unfortunate that reference is made to the “Winters Doctrine” or to federal reserved rights. Apparently there is some anticipation by the majority that this precedent will effect the adjudication of Indian water rights. Perhaps by analogy it will. However, those cases are not before us.
I concur in the result for the reason that, at the time of the creation of the school trust, the federal government conveyed to the state, not only the land, but the appurtenant right to develop water necessary for fulfillment of the trust purpose. I specifically disavow the remainder of the majority’s opinion.